FILED

OCT 14 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICANS FOR SAFE ACCESS, | No. 07-17388 |
| Plaintiff - Appellant, | D.C. No. CV-07-01049-WHA |
| v. | |
| DEPARTMENT OF HEALTH & HUMAN SERVICES; FOOD AND DRUG ADMINISTRATION, | MEMORANDUM* |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted April 14, 2009
San Francisco, California

Before: D.W. NELSON, BERZON and CLIFTON, Circuit Judges.

Americans for Safe Access ("Safe Access") petitioned the Department of

Health and Human Services ("HHS") for correction under the Information Quality

Act ("IQA"), 44 U.S.C. § 3516, of statements the Department had made

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

concerning the efficacy of marijuana for medicinal purposes. HHS declined to provide the correction, deferring consideration of the request until it completed its comprehensive review of marijuana's medical uses in conjunction with a petition for rescheduling of the drug filed with the Drug Enforcement Administration ("DEA"). Because HHS's response to the organization's IQA petition did not constitute final agency action, the district court had no jurisdiction under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq*., and neither do we. We therefore affirm the district court's dismissal of the case.

Finality is a jurisdictional requirement for review under APA. *See Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citing *Ukiah Valley Med. Ctr. v. Fed. Trade Comm'n*, 911 F.2d 261, 264 n.1 (9th Cir. 1990)). *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997), established the two-part test for determining finality: first, "the action must mark the 'consummation' of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature" and second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id*. (internal citations omitted). The district court concluded that the first *Bennett* criteria – that "the action must mark the 'consummation' of the agency's decisionmaking process" – is not met. *Id.* We agree.

In its response, HHS explained that Safe Access's petition implicates HHS's responsibilities under the Controlled Substances Act and further stated, correctly, that both its guidelines and the OMB guidelines permit it to "use existing processes that are in place to address correction requests from the public." The agency then explained that, because it is conducting a comprehensive review of marijuana's medical uses in conjunction with a petition for rescheduling filed with the DEA, Safe Access will be relegated to that process to seek the "correction" it desires. HHS went on to note that addressing "whether or not marijuana has a currently accepted medical use in the United States prior to completing our comprehensive review would prejudge the outcome of this process."

Thus, HHS made an "interlocutory" decision to defer its determination of whether marijuana has a currently accepted medical use to an existing administrative procedure.[1] *See Bennett*, 520 U.S. at 178. The decision did not

---

[1]In this regard, HHS's decision to defer its determination differs from the FCC's denial of a petition to initiate a rulemaking in *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1037-38 (D.C. Cir. 2002), *modified on reh'g*, 293 F.3d 539. In *Fox*, although the FCC argued that its determination was not final because it intended to continue considering the matter, the Commission had no ongoing administrative procedure to which it referred petitioners. Here, HHS is already reconsidering the medical efficacy of marijuana as part of the DEA rescheduling proceedings.

mark the "consummation of the agency's decisionmaking process" on the substance of the matter. *See id*. at 177-78 (internal quotation marks omitted).

We note, in this connection, that the allegedly inaccurate statement by HHS is inherently time-bound. Specifically, HHS stated, in 2001, that marijuana "has no *currently* accepted medical use in treatment in the United States." (emphasis added). The statements for which Safe Access seeks correction are simply later republications of the earlier statements and do not purport to apply to current circumstances, as opposed to those in 2001. As a result, nothing in the statements for which correction is sought is inconsistent with a finding that marijuana may now, or at some point in the future, have an accepted medical use. Were HHS to replace the statements with new statements finding the opposite to be true based on current research, which is what Safe Access seeks, such a "correction" would not address whether its original statement, made in 2001, was true at the time first made. Thus, new statements by HHS concerning the medical efficacy of marijuana that arise out of the DEA rescheduling proceedings will be equivalent to the new statements from HHS sought by Safe Access's IQA petition.

HHS's letter to Safe Access referring the organization to the already pending DEA rescheduling proceeding would only constitute final agency action if we looked at the IQA in isolation. However, both the Office of Management and

4

Budget ("OMB") and HHS guidelines, which Safe Access does not challenge, contemplate that under the IQA, HHS can use other administrative processes outside the procedure enacted pursuant to the IQA to address correction requests. Because HHS properly deferred its decision on Safe Access's petition to an already pending alternative procedure, rather than reaching the merits of the petition, its decision is not reviewable final agency action.

**AFFIRMED.**